# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6975 | **DATE** | 9/28/2004 |
| **CASE TITLE** | Benedetti vs. Soo Line RR | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Status hearing held. The parties are to exchange proposed witness lists by 10/18/04. Moitons in limine are to be filed by 11/29/04. Responses to the moitons in limine are to be filed by 12/13/04 and replies are to be filed by 12/20/04. Joint pretrial order is to be submitted to this Court's chambers by 01/24/05 as outlined in this Court's standing pretrial order. The parties may obtain a copy of this Court's standing pretrial order from the Court's web page or from the Court's Courtroom Deputy. Pretrial conference set for 02/09/05 at 10:30 a.m. Jury trial set to begin on 02/14/05 at 9:30 a.m. For the reasons stated in the attached memorandum opinion, defendant's motion to strike is granted and defendant's motion for summary judgment is denied. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | SEP 2 9 2004 | | 79 |
| ✓ | Docketing to mail notices. Memorandum opinion distributed in open Court. | | date docketed | | |
| | Mail AO 450 form. | 2007 SEP 29 AM 8:12 | Qmp docketing deputy initials | | |
| | Copy to judge/magistrate judge. | FILED | | | |
| MW6 | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN BENEDETTI,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        No. 03 C 6975
                                   )
SOO LINE RAILROAD COMPANY, d/b/a   )
CP RAIL SYSTEM,                    )
                                   )
            Defendant.             )



DOCKETED
SEP 2 9 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Soo Line Railroad Company d/b/a Canadian Pacific Railway Company's ("Soo Line") motion to strike and on the Soo Line's motion for summary judgment. For the reasons stated below, we grant the motion to strike and we deny the motion for summary judgment.

## BACKGROUND

Benedetti began working for Soo Line in 1971 as a conductor. Benedetti became aware in 1990 that he suffered from polycystic kidney disease, a disorder that gradually gets worse over time, eventually leading to renal failure. According to

1

his specialist, Dr. Kittaka ("Kittaka"), patients with this disease are more prone to losing and wasting salt and water. If they do not keep up their fluid and salt intake, they are more likely to get dehydrated. On September 17, 2000, Benedetti injured his eye while working in Soo Line's Bensenville yard. On September 18, 2000, Benedetti was treated by a physician for the injury and on September 19, 2000, Benedetti was hospitalized for a corneal abrasion and pneumonia. His physician, Dr. Jentel ("Jentel"), released him back to work after one week, with no further restrictions. On September 29, 2000, Benedetti returned to work and provided Soo Line with a release from his physician and the required paperwork to begin working again. Benedetti worked on September 30, 2000, and October 1, 2000. Benedetti claims that he went to work on October 2, 2000, and he was assigned to work with an engineer named Steve Sanchez ("Sanchez"). According to Benedetti, Sanchez noticed that Benedetti looked gaunt, had black circles under his eyes, and that he seemed "spacey" and could not remember his assignment for the day, but Sanchez did not report his concerns regarding Benedetti to management at Soo Line. (Opp. Mot. 2).

On October 3, 2000, Benedetti reported to work again around 7:30 A.M. Benedetti claims that he did paperwork and at approximately 8:30 A.M. Sanchez found Benedetti doing the paperwork. According to Benedetti, Sanchez thought that

Benedetti looked to be in a worse condition than on October 2, 2000, and Sanchez

informed company officer Robert Denny of his concerns. After speaking with

Benedetti, company officers determined that he should be transported to Concentra

Medical Center ("Center") for drug and alcohol testing by James Vakoc, the Road

Foreman of Engines. Benedetti claims that he was examined by a Dr. Bridgeforth

("Bridgeforth") at the Center and that Bridgeforth was not given any information

from Soo Line regarding the reason for Benedetti's visit to the center. Benedetti

claims that Bridgeforth was not made aware of Benedetti's kidney condition at the

time of the examination.

Following the visit to the Center, Benedetti was transported back to Soo

Line's Bensenville yard by Vakoc. Even though the treating doctor found Benedetti

fit to return to work, Soo Line did not allow Benedetti to continue working that day.

Benedetti claims that he was offered a ride home by Vakoc, but refused and drove

himself home. When Benedetti returned home, his condition deteriorated and he

was taken by his wife to a hospital. He was diagnosed with chronic renal failure and

acute renal failure caused by dehydration. After being administered intravenous

fluids, Benedetti's kidney condition improved, but he remained hospitalized for three

days. On October 1, 2003, Benedetti filed a complaint against Soo Line under the

Federal Employers' Liability Act, ("FELA"), 45 U.S.C. § 51 *et seq.*, alleging that

3

Soo Line failed to provide a safe workplace for Benedetti.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Motion to Strike

Soo Line has filed a motion to strike Plaintiff's Exhibit W, the report of Dr. Edward Bleier ("Bleier"), which was first disclosed to Soo Line in Benedetti's Statement of Material Facts and in Benedetti's Response to Soo Line's Motion for Summary Judgment. Soo Line claims that at the beginning of discovery it sent interrogatories to Benedetti seeking disclosure of any expert witnesses. According to Soo Line, Benedetti responded, "[a]t this time, I have not yet decided on expert witnesses , however, I reserve the right to supplement my response in the future." Upon an agreed motion by both parties to extend the discovery period, we granted an extension of discovery from March 3, 2004 to April 5, 2004. Benedetti did not disclose Bleier prior to April 5, 2004.

5

Benedetti claims that he produced Bleier as quickly as possible. The parties

apparently agreed on their own to conduct two additional depositions on April 20,

2004, and Benedetti claims that he decided to disclose Bleier in light of the

deposition testimony. However, Benedetti never sought another discovery extension

beyond April 5, 2004, and we never granted such an extension. Thus, any

revelations that stemmed from such unauthorized discovery were not in accordance

with the court's schedule for the case. Benedetti also claims that he can still disclose

expert witnesses because we have not set dates for a "Final Pretrial Order; final list

of witnesses; list of Exhibits to be used at trial of this matter; or, Motions in Limine."

(Ans. 8-9). There was no misunderstanding about the deadline set by the court and

that the court deadlines applied to fact and expert discovery. A court's order must

be read utilizing common sense. Clearly if a party intends to call an individual as a

witness the identity of that witness must be disclosed during discovery to allow the

opposing party to depose the individual and conduct other discovery regarding the

individual. Benedetti inadvertently affirms this point when he asserts that the court

has not yet set a "final" witness list. While it is true that a party need not call all of

his anticipated witnesses at trial, that does not mean that the party can spring

unknown witnesses on the opposing side at trial. Trial by surprise is no longer part

of our jurisprudence. *Salado by Salado v. General Motors Corp*, 150 F.3d 735, 742

6

n.6 (7th Cir. 1998)(stating that an expert report must be detailed and complete so that

"opposing counsel is not forced to depose an expert in order to avoid ambush at trial;

and moreover the report must be sufficiently complete so as to shorten or decrease

the need for expert depositions and thus to conserve resources.").

We stated specifically in our minute order issued on February 25, 2004, that

"[a]ll discovery is to be noticed in time to be completed by 04/05/04." Thus, based

on our minute order and what was stated by the court orally at status hearings, both

fact and expert discovery needed to be completed by that date. We also specified

that dispositive motions had to be filed by May 5, 2004. Thus, since fact and expert

discovery had to be completed by April 5 and since dispositive motions had to be

filed by May 5, it is clear that all experts needed to be disclosed in time for the

opposing side to conduct discovery regarding the expert and consider the expert and

his report when filing a dispositive motion. *See Musser v. Gentiva Health Servs.*,

356 F.3d 751, 757-58 (7th Cir. 2004)(stating that "[f]ormal disclosure of experts is

not pointless . . .[because] countermeasures that could have been taken that are not

applicable to fact witnesses, such as attempting to disqualify the expert testimony on

grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), retaining rebuttal experts, and holding

additional depositions to retrieve the information not available because of the

7

absence of a report."); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1025 (7th Cir. 1991)(holding that district court did not abuse its discretion in striking expert testimony because of non-compliance with court's discovery schedule and stating that "'[a] district court is not required to fire a warning shot."). Benedetti did not make his disclosure by April 5 and thus he did not comply with our discovery schedule or with Federal Rule of Civil Procedure 26(a)(2)(C) which states that expert and expert report "disclosures shall be made at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). Soo Line sent discovery requests to Benedetti on November 21, 2003, requesting information concerning expert witnesses and the bases for the expert's opinions. Benedetti did not respond to the interrogatories with information regarding Bleier until after the close of discovery.

In addition to disclosing Bleier in an untimely fashion, Benedetti failed to provide an expert report as is required by Federal Rule of Civil Procedure 26(a)(2)(B), which states as follows:

> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions;

the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). Failure to comply with Rule 26(a)(2)(B) results in exclusion that is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado by Salgado v. GMC*, 150 F.3d 735, 742 (7th Cir. 1998).

In Benedetti's answer to Soo Line's Motion to Strike, Benedetti does not try to justify his noncompliance with Rule 26, or explain why his violation was harmless. We cannot find that such an untimely disclosure is harmless or justified. Instead, Benedetti focuses mainly on Bleier's qualifications and attempts to show Bleier's qualifications by presenting new information that was not included in Bleier's report. Pursuant to Rule 26(a)(2)(B) Bleier must include with his report "the data or other information considered by the witness in forming the opinions. . . .[and] any exhibits to be used as a summary of or support for the opinions. . . ." Bleier did not do so in the instant action. Neither has Bleier indicated "the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years" as is required pursuant to Rule 26(a)(2)(B). Also, Bleier's

report does not indicate his qualifications as is required by Rule 26(a)(2)(B) and Benedetti did not produce an affidavit from Bleier stating his qualifications.

Benedetti attempts to cite phrases from case law out of context to argue that he is not required to comply with Rule 26 because his evidence need only be potentially admissible at this stage. While a court will typically not rule of the admissibility of evidence until trial, a court may rule on whether an expert's opinion is a type of admissible evidence prior to trial. This can properly be done prior to the ruling on dispositive motions. The purpose of a summary judgment determination is to assess whether or not the plaintiff has sufficient evidence for a jury to find in his favor without resorting to speculation. In this instance it is proper to address at this juncture whether or not Benedetti can introduce Bleier at trial. *See e.g. Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 814 (7th Cir. 2004)(affirming district court's barring of expert testimony when ruling on summary judgment motion). Nothing in Rule 26 indicates that Benedetti can forestall his compliance with Rule 26 in regards to Bleier's report until trial. The rule specifies that disclosure must be made and the appropriate report provided at that juncture. Rule 26(a)(2)(B) states that the "disclosure shall . . . be accompanied by a written report. . . ."

In addition, the evidence set forth by Bleier must be of a kind admissible at trial. *See Waldridge v. American Hoechst Corp*, 24 F.3d 918, 920 (7th Cir. 1994).

For expert opinions to be admissible, they must be made within a reasonable degree of medical certainty, be based on sufficient facts or data, and not be merely subjective and speculative. Fed. R. Evid. 702; *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). Since Bleier did not indicate the specific information he used to render his opinions, did not show his opinions were within a reasonable degree of medical certainty, and did not present the scientific methods he used to form his opinion, Bleier's report is not the kind of evidence admissible at trial and not the kind of evidence admissible to oppose a motion for summary judgment. We also find that Bleier's report fails to sufficiently show causation. Therefore, we grant Soo Line's motion to strike Plaintiff's Exhibit W, Report of D. Edward Bleier.

## II. Motion for Summary Judgment

Soo Line argues that it is entitled to summary judgment because it had no duty to examine Benedetti and make sure that he was fit to perform his position. Soo Line also contends that it has no duty to monitor the medical treatment of employees and Soo Line took all appropriate steps in regards to addressing Benedetti's apparent health issues on October 3, 2000. Finally, Soo Line argues that there is not sufficient evidence indicating that Soo Line maintained an unsafe workplace and there is not sufficient evidence that would establish the element of causation.

FELA provides a broad remedial framework for railroad workers who suffer injuries while in the scope of their employment. *Walker v. NE Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). Under FELA, "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ." 45 U.S.C. § 51. To establish liability in a FELA case, the plaintiff's "burden is significantly lighter than in an ordinary negligence case." *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 685 (7th Cir. 1995). Although the plaintiff bringing a FELA claim has a lesser burden for establishing negligence, a plaintiff must still "prove the traditional common law elements of negligence, including foreseeability, duty, breach, and causation." *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). *See also Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992)(stating that "FELA is not a workmen's compensation act; causation must still be proved").

A. Duty to Monitor Employees' Health and Medical Care and Foreseeability

Soo Line argues that it had no duty to monitor Benedetti's health and his medical treatment. Benedetti alleges in his complaint that Soo Line failed to ensure that Benedetti was fit to perform his job, implement effective methods to treat

12

Benedetti's health problems, and failed to monitor the health care treatment of

Benedetti. An employer has no duty under the FELA to examine its employees and

monitor their health or health care treatment. *Fulk*, 22 F.3d at 126. *See also Moody*

*v. Boston and Maine Corp.*, 921 F.2d 1, 3 (1st Cir. 1990)(stating that "[t]here is no

requirement under the FELA that a railroad perform periodic physical examinations

on its employees.").

In the instant action, there is no evidence to indicate that Soo Line breached

any duty it might owe to Benedetti in regards to allowing Benedetti to continue

working on October 2, 2000. According to Benedetti, his doctor had cleared him for

work after his eye injury and pneumonia. Benedetti came to work on October 3,

2000, and exhibited symptoms that indicated that he was not functioning properly

and the management at Soo Line stopped Benedetti from working and sent him to

see a physician. There is no evidence of negligence by Soo Line up until that point.

However, when Soo Line decided to send Benedetti to a physician for treatment, it

owed certain duties to Benedetti.

Soo Line cites *Fletcher v. Union Pac. R. Co.*, in which the court stated that

"[g]enerally, a railroad has no duty to ascertain whether an employee is physically fit

for his job. . . ." 621 F.2d 902, 909 (8th Cir. 1980). However, the court in *Fletcher*

also stated that if an employer "undertakes to give physical examinations, it is liable

if it performs such undertaking negligently." *Id.* The court also stated that "[w]here

a physician certifies the employee as fit to return to heavy labor, it is not the

employee's burden to show malpractice by the examining physician, rather it is

sufficient to show that the railroad knew or should have known that the employee

was unfit for the work because of his condition. . . ." *Id.* Thus, Soo Line did not

absolve itself from liability merely by sending Benedetti to the Center.

Soo Line also argues that Benedetti's hydration was his own responsibility

because "[h]e was receiving treatment for [the] condition for many years prior to

October 3, 2000 and had been told by his doctors to keep hydrated." (SJ Reply 7).

However, the court in *Fletcher* also stated that "[t]he employee's knowledge of his

physical condition does not absolve the railroad of its duty to protect the employee

from further injury." *Id.* Likewise in the instant action, although Benedetti was

aware of his condition, if as Benedetti contends he was not in a proper mental state

to make decisions concerning hydration, Soo Line cannot complain about the fact

that he did not remedy his own health situation, particularly when Soo Line

undertook the responsibility of caring for Benedetti. Soo Line admits that Benedetti

was acting strangely and was in a confused state to the extent that Soo Line thought

that Benedetti might have been under the influence of drugs or intoxicated. Soo

Line admits pursuant to Local Rule 56.1 that Benedetti testified at his deposition that

14

on the morning of October 3, 2000, Benedetti felt "like he was walking in his sleep."

( R SAF 24). Soo Line properly sent Benedetti to a physician, but in undertaking

such a task, Soo Line also had a duty to do so in a competent fashion. Soo Line

admits that it was aware of Benedetti's kidney condition. ( R SAF 35). Soo Line

admits that prior to sending Benedetti to the Center, Soo Line officers spoke to the

registered nurse at Soo Line about Benedetti's condition on the morning of October

3, 2000. ( R SAF 57). Soo Line admits that the nurse was consulted because

"Benedetti had been off for a prior illness, there was concern about his physical

condition, [and] John looked to be frail." ( R SAF 58). Soo Line admits that the

registered nurse at Soo Line was concerned about Benedetti's "health in general." (

R SAF 61). Denny states that he orally told Vakoc to tell the Center to do drug and

alcohol tests and conduct a physical. (Denny Dep. 54). Denny also contended that

the Center knew the type of exams to be performed on Benedetti because Vakoc had

to present the clinic with a blank injury form from Soo Line. (Denny Dep. 53).

However, Soo Line cannot point to any evidence that would indicate that the Center

or Bridgeforth, the treating physician, were informed about Benedetti's kidney

condition. Also, Benedetti has pointed to evidence that creates a legitimately

disputed issue as to whether Vakoc was told to ask for a physical for Benedetti and

whether Vakoc told anyone at the Center to give Benedetti a physical. Denny failed

15

in his deposition to provide any conclusive answers to show that he was certain that Vakoc told the Center to ask for physical. Denny merely states that he believes that Vakoc told the Center to conduct a physical. (Denny Dep. 57). There is also a credibility issue to be decided by the trier of fact regarding whether or not Denny orally told Vakoc to ask for a physical. Another issue to be decided by the trier of fact is whether or not Vakoc's presentment of a blank injury form to the Center was sufficient to inform the Center that a physical examination should be conducted and inform the Center about Benedetti's health concerns.

Thus, Soo Line officers, knowing that Benedetti was in an incoherent state and unable to make proper decisions for himself, sent Benedetti to the Center and there is no evidence that indicating that they informed the clinic about Benedetti's condition. Also, it is unclear whether or not the Center was told to conduct a physical and whether a physical was conducted. If Soo Line had informed Bridgeforth about Benedetti's condition perhaps Bridgeforth could have made a proper diagnosis and began hydration sooner. Even if Soo Line had not sent Benedetti to the Center, if it had merely contacted his family or emergency contacts, who likely would have been aware of Benedetti's condition, Benedetti might have received hydration and proper treatment sooner. It is also a legitimately disputed issues as to what Benedetti's mental state was on the morning of October 3, 2000,

and whether or not he was capable of informing Bridgeforth about his condition. Thus, there is are legitimately disputed facts at issue regarding whether or not Soo Line acted negligently in taking Benedetti to the Center and sending him home on his own.

Soo Line is not absolved from liability merely because it sent Benedetti to the Center and Soo Line could have been negligent if it knew that Benedetti was mentally incapacitated and Soo Line failed to inform the Center about Benedetti's health history, failed to ask for a physical examination, and ended up sending Benedetti home on his own later in the afternoon of October 3, 2000, rather than contacting Benedetti's family or emergency contacts in the morning of October 3 who might have acted sooner to assist Benedetti properly. Soo Line admits that they were concerned about Benedetti's health on the morning of October 3, 200, and Soo Line admits that they were aware of Benedetti's recent absence from work due to illness and consulted the registered nurse at Soo Line who was aware of Benedetti's kidney condition. Soo Line states in its reply that "[i]t was because of defendant's knowledge that plaintiff had a pre-existing medical problem that defendant's company nurse, Joan Kuechle, insisted that plaintiff be examined by a doctor, which he was." (SJ Reply 8). Although Soo Line thought Benedetti's kidney condition significant, there is no evidence that the Center was told about his condition, and it is

unclear as to whether or not the Center was told to conduct anything other than a drug and alcohol examination. Therefore, we find that there is sufficient evidence to create a triable issue as to whether Soo Line breached a duty owed to Benedetti.

## B. Causation

Even if Benedetti can show that Soo Line's awareness of his condition created a duty owed by Soo Line to monitor Benedetti's health, Benedetti must establish that Soo Line's actions or inaction caused Benedetti's ultimate health crisis for which he seeks compensation. Soo Line argues that Benedetti cannot show causation. For a FELA claim the plaintiff need only demonstrate that the employer's negligence played even the "slightest role" in causing the employee's injury. *Darrough v. CSX Transp., Inc.,* 321 F.3d 674, 675 (7th Cir. 2003). Thus, the determinative question is whether the railroad utilized reasonable care in maintaining a reasonably safe work environment. *Id.* at 676. There is no expert testimony that will be presented at trial by Benedetti to show that Soo Line had any role in his ultimate injury. As discussed above, Benedetti's only expert witness' testimony is inadmissible and is stricken from the record. Benedetti asserts that Jentel and Kittaka each testified that if Benedetti had been hydrated earlier on October 3, 2000, his condition would have been helped. (Kittaka Dep. 30, Jentel Dep. 80). Kittaka stated that "it would have

18

helped" Benedetti's condition if Soo Line had made sure he was hydrated on the morning of October 3, 2000, (Kittaka Dep. 30), and Kittaka also stated that if Benedetti was immediately put on an IV in the morning of October 3, it "probably would have improved things." (Kittaka Dep. 31). As indicated above, the plaintiff need only demonstrate that the employer's negligence played even the "slightest role" in causing the employee's injury. *Darrough*, 321 F.3d 674, 675 (7th Cir. 2003). Also, as indicated above, to establish liability in a FELA case, the plaintiff's "burden is significantly lighter than in an ordinary negligence case." *DeBiasio*, 52 F.3d at 685. Soo Line does not deny that dehydration played a role in Benedetti's eventual renal failure and does not deny that Benedetti's incoherent state on the morning of October 3, 2000, could have resulted from dehydration. There is sufficient evidence to create a triable issue as to whether or not Soo Line's actions and inaction played a role in Benedetti's ultimate renal failure. Therefore, we deny the motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Soo Line's motion to strike and deny Soo Line's motion for summary judgment in its entirety.

Samuel Der-Yeghiayan

Dated: September 28, 2004          United States District Court Judge